## McKAY v McKAY TIRE STORES, INC, et

Ohio Appeals, 2nd Dist, Darke Co

No 533. Decided July 11, 1938

Wilbur D. Spidel, Greenville, George W. Porter, Greenville, for plaintiff.

Jesse K. Brumbaugh, Greenville, Charles H. Elston, Cincinnati, for defendants.

**OPINION**

By HORNBECK, J.

This is an appeal on questions of law from a judgment on a verdict of a jury for plaintiff against defendants in the sum of $3,696.57.

The issues joined by the pleadings and supplemental pleadings arise on four claims, three of which, the 1st, 2nd and 4th, are well set forth in the brief of counsel for plaintiff:

(1) "Breach of contract of the Firestone Tire & Rubber Co. in failing to pay in cash to the McKay Tire Stores, Inc., the sum of $18,500, by reason of which plaintiff claims damage in the sum of $5,000."

(2) "Damages for loss of salary due plaintiff by the terms of the contract between the Rubber Company and plaintiff. Amount claimed, $6,000."

(3) "Damages in the sum of $5,000 on threatened discharge of plaintiff, in violation of contract."

(4) "Wages claimed to be due by plaintiff from defendants from the date of discharge of plaintiff as manager of McKay Tire Stores; Inc., to the time of the filing of the supplemental petition, in the sum of $3,689.84."

The trial judge submitted all of these claims and issues drawn thereon to the jury, which returned a verdict in the amount heretofore set forth.

For the purpose of brevity we hereafter refer to defendant McKay Tire Stores, Inc., as Tire Stores and defendant Firestone Tire & Rubber Company as Rubber Company.

Defendants assign several grounds of error, which are set forth and briefed under the following headings: In refusing to sustain motion to strike supplemental petition from the files. In refusing to direct verdict for defendant at conclusion of whole case. In general charge to the jury. These general headings are divided into numerous claimed errors, which, insofar as required, we shall discuss.

The trial judge committed no error in determining that though ▮he subject matter of tne supplemental petition could more properly have been embodied in an amended petition, no prejudice resulted to the defendant in the form in which the averments were set out. Issue was properly drawn on the supplemental petition and in practical effect there was no difference in the method and manner of presenting the issue thus drawn than if raised by pleading in proper form. Likewise, the court was correct in overruling the motion of defendants for a directed verdict. The plaintiff had a right to go to the jury on one at least of the issues.

Defendants insist that granted the plaintiff had a right to have a determination of the jury on any issue drawn, none was presented to the jury without prejudicial error to the defendants. The plaintiff invokes the two-issue rule and says that if it be conceded that all of the issues should not have gone to the jury, inasmuch as we have a general verdict which can be supported upon a finding in favor of the plaintiff on one or more of the issues properly submitted, the verdict must not be disturbed.

Fair consideration of the voluminous record leads us to adopt the theory of the plaintiff and to hold that the amount of the verdict can be supported upon the hypothesis that the jury may have found for the plaintiff upon one cause of action only.

Inasmuch as it is our obligation to pass upon all errors assigned, it will be

necessary to give some consideration to the claim that no issue was properly presented to the jury.

The contract, which insofar as it speaks was controlling of the rights of the parties, consisted of a letter, of date March 30, 1929, written by the plaintiff to the Rubber Company and accepted by it of date April 10, ˉ929. All parts of the contract are germane to questions for our consideration.

### THE LETTER AND CONTRACT.

Greenville, Ohio
March 30, 1929

Firestone Tire & Rubber Company
Akron, Ohio

Gentlemen:

I have been considering the advisability of opening a business in Greenville, Ohio, for the sale of tires, tubes, accessories, motor accessories, gasoline and oil and the doing of a general Service Station business.

In order to open such a business I should like to have your assistance and cooperation. With this in mind I suggest the organization of a corporation under the name of "McKay Tire Stores, Inc." With an authorization capital of $50,000, the issuance of $23,500 of which should be sufficient for present purposes.

I will subscribe for $5,000 and you or your nominees may subscribe for $18,-500, all of which is to be paid in, in cash.

I understand you have leased a parcel of land in Greenville on which you intend to erect a so-called Master Service Station at a cost of approximately $13,500. I suggest that the Company to be organized lease this parcel of ground and building from you, the rental for the first five years to be $274.85 per month and for the second five years to be $324.85 per month. It is understood, of course, that if the building costs substantially more of less than $13,500 a proper revision of this rental figure will be made. This proposed corporation could start in business as soon as the building which you contemplate is ready for occupancy.

It is understood and agreed that if at any time I may wish to dispose of the stock which I may have in the Company, I shall first offer the same to you and you shall thereupon purchase it, and you shall have the option at any time during the existence of the corporation to buy such stock as I may have; the transfer in either event to be at the then book value of the stock.

My salary is to be at the rate of $225.00 per month, which figure is, of course, subject to change from time to time as conditions may warrant.

If this arrangement is satisfactory to you, you will kindly note your acceptance at the place provided below.

Yours very truly,
W. G. McKay.

Accepted: April 10, 1929
Firestone Tire & Rubber Company
by J. W. Thomas
Vice President.

It was the claim of the plaintiff that by the terms of the contract and particularly the second and third paragraphs thereof, the Rubber Co. was obligated to invest in cash the sum of $18,500. It is the position of defendants that it was discretionary with the Rubber Co. whether or not it would advance the full amount of $18,500. Pursuant to the contract the plaintiff put $5,000 in cash in the stock of the Tire Co. The Rubber Co. advanced in all the sum of $9,000. Because of this failure of the Rubber Co. to put in the full amount of $18,500, plaintiff asserts in his first cause of action that he was damaged in the conduct of the business and the resultant value of his stock in the sum of $6,000. The Rubber Co. insists that if it was the purport and meaning of the contract that it was to advance $18,500, the plaintiff could not have been damaged because it lent money to carry on the business in the sum of more than $10,000; that the effect of these loans was as advantageous, if not more so, to the plaintiff than the purchase by cash of the total amount of the stock which plaintiff claims

should have been subscribed by the Rubber Co.

The trial judge instructed the jury that the contract was definite and that the Rubber Co. was obligated to put up cash for stock in the amount of $18,500 and submitted to the jury the question whether or not the plaintiff had been damaged by the failure of the Rubber Co. to comply with its obligation. The action of the trial judge in both particulars is questioned. As to the first proposition, we are satisfied that from all circumstances to be ▮▮▮▮▮▮▮▮ found in the record and the terms of the contract, the trial judge was correct in his interpretation thereof.

: Without discussing at length the testimony pertinent to the question of the damage resulting to the plaintiff by the failure of the defendant to advance the cash for stock, we conclude that no sum could have been awarded to the plaintiff upon this issue. The Tire Stores was doing business almost exclusively with the Rubber Co. The Rubber Co. and McKay were practically a partnership, although organized as a corporation conducting the business under the name McKay Tire Stores, Inc. the Rubber Co. by reason of its ownership of ninety shares of the stock of the Tire Stores at all times controlled the operation of its business.

There is no evidence of controlling effect that the company was embarrassed financially by reason of the failure of the Rubber Company to advance cash for stock; that the Tire Stores was unable to take advantage of discounts; that it had not the ability to buy any stock required; that any of its accounts went unpaid—nothing, in fact, of definite character upon which the jury could predicate a finding of any sum certain representative of damages growing out of the default of the Rubber Co. in its obligation under the contract, inasmuch as it provided more money to maintain the credit of the Tires Stores in the form of loans without interest, when needed, than it

would have been required to advance as a stockholder.

The principal loss to the plaintiff representative of his damage under his first cause of action would be the depreciation in the value of his stock as a result of the failure of the Rubber Co. to pay in cash for the stock to which it had agreed to subscribe. Under the contract this loss would not be in the market value of the stock but in its book value. Book value and market value of stock many times differ. As a matter of fact, they are seldom the same.

Under the contract the Rubber Company was bound to purchase plaintiff's stock at any time he wished to dispose of it and the transfer was to be at the then book value of the stock. Plaintiff's action, however, was not predicated upon breach of the contract in failing to buy the stock at its book value.

The testimony which the plaintiff offered purposed to disclose that the value of the stock, book or market, had been depreciated by the business and bookkeeping methods of the Rubber Company was too general in character to permit the jury to make any determination of the extent, if any, of the decrease. Much general testimony was offered which might have some probative effect as to the market value of the stock at the time of plaintiff's discharge, but nothing specific to which the general testimony could relate. The only specific testimony as to the book value of the stock was that which came from the Rubber Company and of course upon the basis upon which its books were set up the correct book value appeared therein.

The second issue related to the claim of the plaintiff that he should have continued to draw the amount of his monthly salary in the sum of $225.00, as set forth in the contract. This sum was subject to change from time to time, "as conditions might warrant."

There is no doubt that the business was not successful. Many reasons therefor could be assigned from an examination of the Bill of Exceptions. One upon which all parties agree was the fact

that this business was operated during the whole period of the nationwide depression and suffered accordingly.

There is no proof that plaintiff was coerced into acceptance of a lesser salary.

. The insurmountable obstacle to plaintiff's recovery under this second issue is the fact that he consented to the reduction in his salary. It may be and was urged that he was without power to prevent the reduction but this does not alter the fact that he not only did not complain but that he ac- quiesced at a time when, if at all, he should have objected. This action in itself precludes a consideration of the question whether or not, under all the facts, the amount of business of the company justified a greater salary than the amounts paid to the plaintiff during the period that he served as manager of the Tire Stores.

We can find no basis for the allowance of any damages to the plaintiff on the second issue presented to the jury.

. The third claim of the plaintiff is that the Rubber Company through the Tires Stores, had asked the plaintiff to resign his position as an employee of the Tire Stores and threatened to and has entered proceedings to remove him as director, president and employee of Tire Stores without just cause therefor, in violation of the contract, to his damage in the sum of $5,000.00.

It is doubtful, indeed, if any general damages would flow from the averments just set out. If any damage arose it would be special in nature and should be specially plead. However, as we interpret the general charge of the court there was no submission to the jury of any issue drawn by this third claim of the plaintiff and the answer thereto. All damages which could have been awarded to the plaintiff by the jury by reason of violation of the contract in the discharge of plaintiff as manager of the Tire Stores was submitted upon the issue made on the supplemental petition.

The trial judge correctly submitted this issue to the jury and properly interpreted the contract, namely, that the plaintiff was entitled to continuing employment as manager of the Tire Stores unless discharged for good cause. Whether or not good cause existed was a question of fact which the jury had a right to resolve in favor of the plaintiff.

The trial judge was correct, then, in presenting to the jury this last issue and if no error prejudicial to the defendants appears in the charge in respect thereto, under the two-issue rule, the verdict and judgment should not be disturbed.

In the view that we have taken of this case thus far many of the errors urged, directed to the charge of the court, do not require further specific consideration. It is urged that the court erred in defining the measure by which damages could be awarded to the plaintiff under his claim in the supplemental petition, in that the court failed to say to the jury that it was the obligation of the plaintiff to be diligent in an effort to obtain employment and that in the event diligence was not exercised by him, then and in that event the jury should credit him with such earnings as he might have earned had he been diligent. We mark no serious difference between the language of the court and that which counsel for defendants insists should have been given to the jury. The general charge followed the rules laid down in the controlling cases. **Cleveland v Luttner, 92 Oh St 493; Congregation v Ettinger, 16 O. C. C. N.S. 305.**

We have examined this unusually long record and the mass of exhibits, together with the briefs of counsel and all authorities cited. We have made this decision somewhat brief, confining it to the substantial questions presented and not indulging in discussion of many collateral propositions urged and argued at considerable length.

The case was difficult to present to a jury. Many of the questions presented were in the field of expert accounting

with which laymen were not well qualified to cope. It likewise required much skill on the part of the trial judge to make the issues understandable to the jury.

Counsel offer many objections to the charge and insist that it was not complete or sufficiently definite and did not properly inform the jury of its obligations. However, counsel offered no assistance to the court by way of special charges or suggestions of subject matter to be incorporated in the general charge and made no specific objection or suggestion at the conclusion of the general charge. Nor did they avail themselves of the opportunity to learn upon what issue or issues and in what amount the jury found for the plaintiff. In this situation we must examine the general charge to determine whether or not, as to the issue which we hold was properly submitted to the jury, there were errors of commission in such submission. So testing this charge we find no such error. Upon the issue which we have heretofore discussed the cause was properly submitted to the jury and the verdict is responsive thereto.

The judgment will therefore be affirmed.

BARNES, PJ, and GEIGER, J, concur.