PERRY, APPELLANT, *v.* BUCKEYE COMMUNITY SERVICES; ADMINISTRATOR, OHIO BUREAU OF EMPLOYMENT SERVICES, APPELLEE.

(No. 412 — Decided May 12, 1988.)

*Gary M. Smith,* for appellant.
*Anthony J. Celebrezze, Jr.,* attorney general, and *Lawrence J. Hackett,* for Administrator, Ohio Bureau of Employment Services.

GREY, P.J. This is an appeal from a judgment of the Pike County Court of Common Pleas affirming a decision of the Unemployment Compensation Board of Review, denying Sylvia J. Perry's application for unemployment benefits. We reverse.

On June 20, 1985, Sylvia Perry filed an application for determination of benefit rights. On July 3, 1985, the Administrator of the Ohio Bureau of Employment Services determined that Perry had quit her employment with Buckeye Community Services ("Buckeye") without just cause. Perry's claim for benefits was denied. Upon Perry's request for reconsideration the administrator affirmed the initial denial.

Perry filed an appeal with the Unemployment Compensation Board of Review ("board"). A hearing was held before a referee of the board at which time both Perry and Buckeye were questioned by the referee and presented testimony on their behalf. After the hearing was completed, the referee affirmed the denial of benefits on the grounds that Perry had terminated her employment with Buckeye

without just cause. The board denied Perry's application to institute further administrative appeal.

On November 21, 1985 Perry timely appealed the board's decision to the Pike County Court of Common Pleas. The trial court affirmed the board's decision. Perry appeals the trial court's decision and assigns two errors.

First Assignment of Error

"The Pike County Court of Common Pleas erred by finding that the decision of the Board of Review was supported by the manifest weight of the evidence and correct as a matter of law."

At issue here is whether Sylvia Perry terminated her employment with Buckeye Community Services with just cause pursuant to R.C. 4141.29(D)(2)(a).

R.C. 4141.29(D)(2)(a) provides in pertinent part:

"(D) Notwithstanding division (A) of this section, no individual may * * * be paid benefits under the following conditions:

"* * *

"(2) For the duration of his unemployment if the administrator finds that:

"(a) He quit his work without just cause or has been discharged for just cause in connection with his work * * * [.]"

Perry asserts that she terminated her employment with Buckeye for just cause due to the continuing mental stress of caring for a mentally retarded adult. Buckeye contends that Perry left her employment without just cause. "Just cause" is an issue reserved for the trier of fact to decide. *McKay* v. *McKay Tire Stores, Inc.* (App. 1938), 29 Ohio Law Abs. 304. In a board of review hearing before a referee, the referee is the trier of fact. *Brown-Brockmeyer Co.* v. *Roach* (1947), 148 Ohio St. 511, 36 O.O. 167, 76 N.E. 2d 79.

The scope of review in a case such as the one presented here is extremely limited both at the trial court and appellate levels. This court, in a recent opinion in *Webb* v. *Ohio Bur. of Emp. Serv.* (Feb. 24, 1987), Vinton App. No. 432, unreported, presented an analysis of the review authority of both courts. In *Webb,* we stated at 3:

"The review authority of the common pleas court is set forth in R.C. 4141.28(O) and provides that 'If the court finds that the decision was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse and vacate such decision or it may modify such decision and enter final judgment in accordance with such modification; otherwise such court shall affirm such decision.'

"Since the appeal is not de novo but one of law, with respect to factual issues the court is limited to determining whether the Board of Review's decision is supported by evidence in the record. *Kilgore* v. *Bd. of Review* (1965), 2 Ohio App. 2d 69. The court may not substitute its judgment for that of the Board of Review as to the facts and may not reverse simply because it interprets the evidence differently than did the Board of Review. *Brown-Brockmeyer Co.* v. *Roach* (1947), 148 Ohio St. 511; *Fahl* v. *Board of Review* (1965), 2 Ohio App. 2d 286; *Kilgore, supra.*"

If the judgment of the board of review below is supported by some competent credible evidence going to all the essential elements of the case a reviewing court may not reverse the judgment as being against the manifest weight of the evidence. *Seasons Coal Co.* v. *Cleveland* (1984), 10 Ohio St. 3d 77, 10 OBR 408, 461 N.E. 2d 1273. If reasonable minds could fairly reach different conclusions a reviewing court may not reverse on

the manifest weight of the evidence. *Angelkovski* v. *Buckeye Potato Chips Co.* (1983), 11 Ohio App. 3d 159, 11 OBR 242, 463 N.E. 2d 1280.

As an appellate court we may only reverse a decision of a common pleas court on the manifest weight of the evidence on appeal from the board of review if the trial court has abused its discretion. *Angelkovski, supra.* Absent such an abuse we must affirm. An abuse of discretion connotes more than a mere mistake on the part of the trial court. The decision below must be clearly wrong. *Id.*

Here, the decision below is clearly wrong. The trial court abused its discretion in affirming the decision of the board of review. The board's decision was clearly against the manifest weight of the evidence, finding that Perry did not quit for just cause.

Perry testified and presented testimony from another witness that Wanda, the mental health client, had become more uncontrollable and difficult to handle. Perry testified that she had been pushed to a point where she was "vegetating mentally." There was unrefuted testimony that Perry notified her superior, Susan Tilton, about her difficulty. Counseling was suggested and attempted but the situation remained the same.

The evidence presented clearly indicates that Perry's quit was for just cause because she had to quit to preserve her mental health. In *Daugherty* v. *Bur. of Emp. Serv.* (1984), 21 Ohio App. 3d 1, 2, 21 OBR 1, 2, 486 N.E. 2d 242, 243, the Eleventh District Court of Appeals noted:

" '* * * Traditionally, just cause, in the statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act.' *Peyton* v. *Sun T.V.* (1975), 44 Ohio App. 2d 10, 12."

Here, Perry's inability to handle the mental health client, coupled with her superior's refusal or inability to alleviate that situation, was a justifiable reason for not continuing in her employment. If we do not acknowledge that workers in positions such as Perry's get mentally exhausted and emotionally drained in caring for mental health adult clients and that quitting because of such exhaustion is for "just cause," such positions will go unfilled.

The trial court abused its discretion in affirming the board of review's decision. Perry's first assignment of error is well-taken and is sustained.

Second Assignment of Error

"The Pike County Court of Common Pleas erred by finding that Ms. Perry had received a fair hearing."

Perry asserts that the board of review referee failed to provide a fair hearing pursuant to Ohio Adm. Code 4146-7-02, and that the trial court erred in holding that such a hearing was fair.

Ohio Adm. Code 4146-7-02 provides in pertinent part:

"* * * Where a claimant or employer is not represented by counsel, the Board or Referee conducting the proceeding shall advise such party as to his rights, aid him in examining and cross-examining witnesses, and give him every assistance compatible with the discharge of the official duties of the Board or Referee."

During the hearing the referee refused to permit Perry to present all of her witnesses, deeming these witnesses' testimony to be cumulative. Further, the referee put words in Perry's mouth and essentially testified himself for the record. The referee's actions denied Perry her full panoply of due process rights. Thus, the trial court abused its discretion in holding that the board of review referee afforded Perry a fair hearing. Perry's

second assignment of error is well-taken and is sustained.

The judgment of the trial court is reversed.

*Judgment reversed.*

ABELE, J., concurs.

STEPHENSON, J., dissents.

STEPHENSON, J., dissenting. I respectfully dissent from the judgment and opinion sustaining appellant's two assignments of error and reversing the judgment of the court below which affirmed the decision of the Ohio Unemployment Compensation Board of Review denying Sylvia Perry's claim for unemployment compensation benefits.

On June 20, 1985, appellant filed an application for determination of benefit rights with respect to a benefit year beginning June 16, 1985. On July 3, 1985, the administrator disallowed appellant's claim. On August 7, 1985, the administrator affirmed his initial determination disallowing appellant's claim.

On September 4, 1985, a hearing was held before a referee of the Unemployment Compensation Board of Review at which hearing the following pertinent evidence was adduced. From November 1978 until June 16, 1985, appellant was employed by Buckeye Community Services, which provided residential services to developmentally disabled people. Appellant worked as a home service worker where she was responsible for providing a home for developmentally disabled persons and to train such persons in self-help skills, all aspects of daily living community integration, personal hygiene, and social skills. During the seven years that appellant worked for Buckeye Community Services, she worked with approximately five different individuals in her home. In the last four years, appellant took care of a developmentally disabled person named Wanda in her home.

Appellant testified that she understood what she would be required to do when she took the job and that she had problems of mental suffering from caring for Wanda that resulted in frustration from the confinement of the job, the difficulty in teaching the client, and the client's over-possessiveness. On June 15, 1985, appellant's client became jealous that appellant was to leave for a date that evening, resulting in appellant calling her supervisor of the last three months, Susan Tilton, and ultimately in having her client stay with her friend while appellant went out on a date. Appellant quit the following day when her mother had a stroke and she wanted to go over to see her, but could not since her client did not want to go. Appellant testified that she was vegetating mentally and that her mental condition became so bad that she could not even stand to be around her own grandchildren. Marjorie Hall testified that appellant's client had been nervous and stubborn.

Susan Tilton testified that in a situation where a home service worker and a client did not get along, the employee could talk with her supervisor and request that the client be moved, that appellant had told her in her last month of work that Wanda was difficult to handle, that appellant had not said anything about a psychiatric problem, and that appellant never requested that the client be permanently moved from her house. Tilton testified that, depending upon whether or not there was someone to take Wanda's place and if appellant had told her that she requested the client's permanent removal, she would have looked for another client for appellant's home.

According to Tilton's testimony, when appellant had previously experienced difficulty with the client, she suggested that the client get out of the house more, that the client's friends visit appellant's home, and that both the client and appellant undergo joint counseling. Tilton testified that appellant could have requested a medical leave of absence as she had done previously, a month earlier, which Tilton had thought was helpful. Although their initial counselor indicated that counseling would not be beneficial for the client, an interdisciplinary team of the employer felt that looking for another counselor would be appropriate.

On September 13, 1985, the referee issued a decision upholding the administrator's decision on the basis that appellant had quit without just cause. On November 1, 1985, the Unemployment Compensation Board of Review ("board") disallowed appellant's application to institute further appeal. On June 22, 1987, the trial court entered judgment affirming the board's decision.

Appellant's first assignment of error asserts that the trial court erred by finding that the decision of the board was supported by the manifest weight of the evidence and correct as a matter of law. R.C. 4141.28(O) provides, in pertinent part, as follows:

"* * * After an appeal has been filed in the court, the board may, by petition, be made a party to such appeal. *If the court finds that the decision was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse and vacate such decision or it may modify such decision and enter final judgment in accordance with such modification; otherwise such court shall affirm such decision.* Any interested party shall have the right to appeal from the decision of the court as in civil cases." (Emphasis added.)

No person is eligible for unemployment compensation benefits unless it is determined that he quit his work with just cause or that he had been discharged without just cause in connection with his work. R.C. 4141.29(D)(2)(a). The term "quit" in Ohio law connotes a voluntary act by an employee not controlled by the employer. *Ours* v. *Ohio Bur. of Emp. Serv.* (Aug. 27, 1986), Ross App. No. 1213, unreported, at 8-9; *Caudill* v. *Ashland Oil Co.* (C.P. 1983), 9 Ohio Misc. 2d 16, 9 OBR 501, 459 N.E. 2d 922. See, also, *Dudley* v. *Morris* (1966), 6 Ohio App. 2d 187, 35 O.O. 2d 349, 217 N.E. 2d 226, affirmed (1967), 10 Ohio St. 2d 235, 39 O.O. 2d 370, 227 N.E. 2d 231. "Just cause" for quitting employment has been defined as that which, to an ordinary intelligent person, is a justifiable reason for doing or not doing a particular act. *Peyton* v. *Sun T.V.* (1975), 44 Ohio App. 2d 10, 12, 73 O.O. 2d 8, 9, 335 N.E. 2d 751, 752; *Taylor* v. *Bd. of Review* (1984), 20 Ohio App. 3d 297, 299, 20 OBR 389, 391, 485 N.E. 2d 827, 828-829; *Daugherty* v. *Bur. of Emp. Serv.* (1984), 21 Ohio App. 3d 1, 2, 21 OBR 1, 2, 486 N.E. 2d 242, 243.

Our standard of review on such appeals is as follows:

"The determination of whether just cause exists necessarily depends upon the unique factual considerations of the particular case. Determination of purely factual questions is primarily within the province of the referee and the board. Upon appeal, a court of law may reverse such decisions only if they are unlawful, unreasonable, or against the manifest weight of the evidence. *Brown-Brockmeyer Co.* v. *Roach* (1947), 148 Ohio St. 511, 518 [36 O.O. 167]. Like other courts serving in an appellate capacity, we sit on a court with limited power of review. Such courts are not permitted to make factual findings or to determine the credibility of witnesses. *Hall* v. *American Brake Shoe Co.* (1968), 13

Ohio St. 2d 11, 13 [42 O.O. 2d 6]. The duty or authority of the courts is to determine whether the decision of the board is supported by the evidence in the record. *Kilgore* v. *Bd. of Review* (1965), 2 Ohio App. 2d 69, 71 [31 O.O. 2d 108]. The fact that reasonable minds might reach different conclusions is not a basis for the reversal of the board's decision. *Craig* v. *Bur. of Unemp. Comp.* (1948), 83 Ohio App. 247, 260 [38 O.O. 356]. Moreover, '[o]ur statutes on appeals from such decisions [of the board] are so designed and worded as to leave undisturbed the board's decisions on close questions. Where the board might reasonably decide either way, the courts have no authority to upset the board's decision.' *Charles Livingston & Sons, Inc.* v. *Constance* (1961), 115 Ohio App. 437, 438 [21 O.O. 2d 65]." *Irvine* v. *Unemployment Comp. Bd. of Review* (1985), 19 Ohio St. 3d 15, 17-18, 19 OBR 12, 15, 482 N. E. 2d 587, 590.

The majority opinion herein concludes that the decision of the board is "clearly wrong" and "clearly against the manifest weight of the evidence." However, such position ignores the testimony of appellant's supervisor that appellant had not complained to her of any psychiatric problems, that appellant never requested the permanent removal of the client from her home and the placement of a new client therein, and that appellant did not request, at the time she quit, a medical leave of absence which Tilton thought had been beneficial on a prior occasion.

The Ohio Supreme Court has held that "[a]n employee's voluntary resignation on the basis of health problems is without just cause within the meaning of R.C. 4141.29(D)(2)(a) when the employee is physically capable of maintaining a position of employment with the employer, but fails to carry her burden of proving that she inquired of her employer whether employment opportunities were available which conformed to her physical capabilities and same were not offered to her by the employer." *Irvine, supra,* syllabus. As noted by the trial court herein, appellant's alleged mental problems arose from her difficulties with the particular client and not the job in general. Therefore, where evidence adduced at the hearing indicates that appellant did not inquire of Buckeye Community Services whether there was another available client that could replace the one she had experienced difficulties with, the *Irvine* rationale requires an affirmance of the trial court's decision. Hence, I would overrule appellant's first assignment of error.

Appellant's second assignment of error asserts that the trial court erred by finding that appellant had received a fair hearing. R.C. 4141.28(J) provides in part as follows:

"When an appeal from a decision on reconsideration of the administrator or deputy is taken, all interested parties shall be notified and the board or a referee shall, after *affording such parties reasonable opportunity for a fair hearing,* affirm, modify, or reverse the findings of fact and the decision of the administrator or deputy in the manner which appears just and proper. In the conduct of such hearing or any other hearing on appeal to the board which is provided in this section, *the board and the referees shall not be bound by common law or statutory rules of evidence or by technical or formal rules of procedure. The board and the referees shall take any steps in such hearings, consistent with the impartial discharge of their duties, which appear reasonable and necessary to ascertain the facts and determine whether the claimant is entitled to benefits under the law.* For the purpose of any hearing on appeal which is provided in this section, the file of the administrator pertaining to the case shall be certified by the administrator and shall auto-

matically become a part of the record in the appeal hearing. All information in such file which pertains to the claim, including statements made to the administrator or his deputy by the individual claiming benefits or other interested parties, shall be considered by the board and the referees in arriving at a decision, together with any other information which may be produced at the hearing." (Emphasis added.)

Similarly, Ohio Adm. Code 4146-7-02 provides, in pertinent part, as follows:

"The Board and Referees shall conduct hearings and other proceedings in a case in such order and manner and shall take any steps consistent with the impartial discharge of their duties which appear reasonable and necessary to ascertain all relevant facts and to render a fair and complete decision on all issues which appear to be presented. To the end that all facts relevant to a fair and complete decision shall be received as directly and simply as possible, the proceedings shall be informal, and the Board and Referees shall not be bound by common law or statutory rules of evidence or by technical or formal rules of procedure. *The Board or Referee conducting a proceeding may examine the interested parties and other witnesses, and each interested party and his representative shall have all rights of fair hearing, including the right of examination and cross-examination of witnesses, the right to present testimony and other evidence,* the right to inspect and examine documents, files, reports and records received in evidence, *the right to present testimony and other evidence in explanation and rebuttal,* the right to subpoenas for witnesses and documentary evidence and the right to present argument. *Where a claimant or employer is not represented by counsel, the Board or Referee conducting the proceeding shall advise such party as to his rights, aid him in ex-*

*amining and cross-examining witnesses, and give him every assistance compatible with the discharge of the official duties of the Board or Referee."* (Emphasis added.)

The Unemployment Compensation Board of Review is a creation of statute and can exercise only those powers and jurisdiction as are conferred upon it by the General Assembly. See *State, ex rel. Cincinnati,* v. *Ohio Civil Rights Comm.* (1981), 2 Ohio App. 3d 287, 288, 2 OBR 317, 319, 441 N. E. 2d 829, 831; *Ohio Central Tel. Corp.* v. *Pub. Util. Comm.* (1957), 166 Ohio St. 180, 182, 1 O.O. 2d 464, 465, 140 N.E. 2d 782, 784. Additionally, it must conform its conduct to procedures set forth in the statutes or in rules adopted by the board pursuant to statutory grants of authority. *State, ex rel. Cincinnati, supra; State, ex rel. Consumers League of Ohio,* v. *Ratchford* (1982), 8 Ohio App. 3d 420, 8 OBR 544, 457 N.E. 2d 878; *Lawrence* v. *Leach* (1964), 120 Ohio App. 411, 414, 29 O.O. 2d 284, 285-286, 202 N.E. 2d 703, 705-706.

Appellant argues that the board referee denied appellant her right to a fair trial by not pursuing relevant evidence, limiting questioning techniques, asking too many leading questions, and not allowing appellant's witnesses to fully testify. The majority opinion states that the referee's refusal to permit appellant to present all of her witnesses and putting "words in Perry's mouth" denied appellant her "full panoply of due process rights." I disagree.

At the board hearing, the referee advised both appellant and her employer, neither of whom was represented by counsel, of the procedure he would follow, their opportunity for presenting additional evidence after his questioning, their opportunity to cross-examine witnesses, and their right to make a final statement. Al-

though the referee utilized leading questions on direct examination of appellant, there was no objection to such questioning; and when the referee asked appellant if she had anything else to add, she replied that she could not think of anything.

With respect to appellant's assertion, and the conclusion in the majority opinion, that the referee's refusal to permit appellant to present all of her witnesses denied her the right to a fair trial, appellant subpoenaed four witnesses, but only two witnesses appeared, with one of the absent witnesses being ill and the remaining witness not being able to come but whose letter was admitted as an exhibit into evidence. Appellant explicitly waived the appearance of the ill witness at the hearing. With respect to appellant's two witnesses who appeared, appellant stated that they would both testify as to the behavior of her client and, consequently, the referee concluded that the testimony of the second witness would be cumulative. I discern no violation of appellant's due process rights or right to a fair trial from such procedure. Rather, appellant was given every opportunity by the referee to present her side of the case. See *Ours, supra,* at 4-8. Moreover, assuming the referee erred in failing to elicit other witnesses' testimony regarding the effect of the client on appellant's health, I agree with the trial court that such error was non-prejudicial in the sense that, assuming appellant was undergoing mental stress, she still had to show, pursuant to *Irvine, supra,* that she had inquired of her employer whether employment opportunities were available which could conform to her physical and mental capabilities — which subject none of her witnesses was apparently going to testify about. For the foregoing reasons, I would overrule appellant's second assignment of error and affirm the judgment of the trial court.