**Pamela BODENSIECK, Petitioner,**

v.

**INDUSTRIAL CLAIM APPEALS OFFICE of the State of Colorado, Terra Management Group, LLC, and Pinnacol Assurance, Respondents.**

No. 07CA1022.

Colorado Court of Appeals, Div. IV.

March 20, 2008.

Pamela Bodensieck, Pro Se.

No Appearance for Respondent Industrial Claim Appeals Office.

Harvey D. Flewelling, Denver, Colorado, for Respondents Terra Management Group, LLC, and Pinnacol Assurance.

Opinion by Judge WEBB.

In this workers' compensation proceeding, Pamela Bodensieck (claimant) appeals from the final order of the Industrial Claim Appeals Office (Panel) upholding the denial of her claims for compensation. We affirm.

Claimant worked for Terra Management Group, LLC (employer) as a housekeeper and groundskeeper. She alleged two industrial injuries, one to her right hand in 2004 and the other to her back in 2005. Following two evidentiary hearings before an adminis-

trative law judge, the case was reassigned to another administrative law judge (second ALJ), who determined that claimant failed to prove either injury was work related and denied both of her claims. The Panel affirmed.

## I.

■ Initially, we reject claimant's contention that she was denied due process because the second ALJ had not been present at the hearings but nevertheless determined that her testimony was incredible.

■ Due process requires that a hearing officer either hear the evidence or "read and consider the evidence adduced in his absence." *Big Top, Inc. v. Hoffman,* 156 Colo. 362, 365, 399 P.2d 249, 251 (1965); *see also Ski Depot Rentals, Inc. v. Lynch,* 714 P.2d 516, 519 (Colo.App.1985); *State Comp. Ins. Fund v. Fulkerson,* 680 P.2d 1325, 1327 (Colo.App.1984); *accord Walton v. Indus. Comm'n,* 738 P.2d 66, 67 (Colo.App.1987) (denial of claimant's request for de novo hearing following appointment of new hearing officer did not violate due process because new hearing officer relied on transcript from first hearing).

These cases are consistent with administrative law in other jurisdictions. *See, e.g., Guerrero v. New Jersey,* 643 F.2d 148, 149–50 (3d Cir.1981) ("[A]dministrative officers charged with a decision need not personally hear testimony but may instead rely on a written record.") (collecting federal cases); *Sorenson v. Indus. Comm'n,* 598 P.2d 362, 365 (Utah 1979)(successor judge carefully examined the file, the transcript, and the medical panel report); *cf. In re Fichner,* 144 N.J. 459, 677 A.2d 201, 207 (1996)(administrative due process rarely requires "auditory perception of all the evidence by each board member who votes" (quoting *Feist v. Rowe,* 3 Cal.App.3d 404, 83 Cal.Rptr. 465, 474 (1970))); *but see In re Grimm,* 138 N.H. 42, 635 A.2d 456, 459–60 (1993)(general rule gives way where administrative record does not provide a reasonable basis for determining credibility).

Here, the second ALJ's order notes that both hearings were digitally recorded. The Panel stated that the second ALJ had "reviewed the digital recording of the hearing testimony as well as all evidence and pleadings in the record."

The second ALJ found that "claimant is not a credible witness" because "[c]laimant's repeated insistence on testimony in contradiction to medical records significantly undercuts her credibility"; "[c]laimant also changed her testimony in a way that reflects poorly on her credibility"; and claimant asserted that her back pain "was completely resolved" before the incident giving rise to her claim, although a month before that incident she had reported back "pain of 8 out of 10" and she had received no medical treatment for the pain between this report and the incident.

In concluding that claimant had failed to meet her burden on one of the two claims, the second ALJ relied on the finding that "claimant's testimony is not credible." We discern no due process violation in such reliance.

We conclude that where, as here, a second ALJ listens to recordings, the second ALJ can make credibility determinations.

Listening to a recording of testimony is similar to taking testimony by telephone, which has been held to provide the fair hearing required by due process. *Kroupa v. Indus. Claim Appeals Office,* 53 P.3d 1192, 1194 (Colo.App.2002)(noting that C.R.C.P. 43(i) permits presentation of testimony by telephone); *see also Babcock v. Employment Div.,* 72 Or.App. 486, 696 P.2d 19, 21 (1985)("Physical appearance can be a clue to credibility, but of equal or greater importance is what a witness says and how she says it.... [W]e are satisfied that the audible indicia of a witness'[s] demeanor are sufficient for a referee to make an adequate judgment as to believability."); *Wright v. Unemployment Comp. Bd.,* 51 Ohio App.3d 45, 554 N.E.2d 137, 138 (1988).

Further, a second ALJ listening to a recording of testimony is in a position comparable to that of a sight-impaired judge, who is not foreclosed by due process from presiding over an evidentiary proceeding. *People v. Hayes,* 923 P.2d 221, 225–26 (Colo.App.1995)

(hearing before blind judge does not deny due process); *cf. People v. Pratt,* 205 Cal. App.2d 838, 23 Cal.Rptr. 469, 474–75 (1962) ("Assuming the judge's impairment of vision, we cannot conclude on this record that by reason thereof he was unable to properly perceive the evidence....").

Although the recordings are not in the record, for three reasons we perceive no need to access them for appellate review.

First, established principles for weighing credibility include those applied by the second ALJ: reasonableness or unreasonableness of the testimony, consistency or lack of consistency in the testimony, and contradiction or support of the testimony by other evidence. *See* CJI–Civ. 3:16 (collecting cases).

Second, the implausibility of and inconsistency within claimant's testimony, as well as the inconsistency between that testimony and unrebutted documentation of her medical treatment, are readily apparent from our review of the written record. *See Craig v. Carlson,* 161 P.3d 648, 655 (Colo.2007) ("Here, the trial transcript and juror questionnaires confirm at least one of Carlson's proffered nondiscriminatory reasons for striking each of the female jurors, enabling the successor court to conduct the entire *Batson* analysis without abusing its discretion."). Hence, such implausibility and inconsistency would have been equally apparent to the second ALJ from listening to the recordings.

■ Third, an appellate court gives strong deference to credibility determinations made below. *See Bainbridge, Inc. v. Bd. of County Comm'rs,* 53 P.3d 646, 649 (Colo.App.2001). In most such cases, the appellate court does so based only on the written record before it. And even where the appellate court has access to audio material, "we are in no better position than the trial court to evaluate the audio portion of the videotape." *People v. Adkins,* 113 P.3d 788, 790 n. 2 (Colo.2005).

Accordingly, on the particular circumstances presented, we conclude that reassignment of claimant's case after the hearings to a second ALJ, who made credibility determinations after listening to recordings of the testimony, did not deprive her of due process.

## II.

■ Claimant next appears to contend the second ALJ unduly delayed the issuance of her order and the delivery of benefits. Claimant's reliance on section 8–43–209, C.R.S.2007, is misplaced because that statute addresses the time limits for setting a hearing. Further, because benefits were denied in this case, any claim of an undue delay in their delivery is moot.

## III.

■ Claimant next contends the second ALJ erred and violated her due process rights by crediting the opinion of the physician who conducted an independent medical examination (IME). Claimant asserts that the IME physician was biased and that he had not been retained in accordance with the procedures of section 8–42–107(8)(b)(II), C.R.S.2007. We disagree.

The IME physician was retained and paid by employer to render his opinion on whether the conditions requiring medical care were work related. He was not retained to resolve a dispute over maximum medical improvement under section 8–42–107(8)(b)(II) or permanent impairment under section 8–42–107.2, C.R.S.2007, and the second ALJ did not give presumptive effect to his opinion on these issues. Further, a review of the physician's testimony indicates no bias or other basis for disqualification. His consideration of claimant's mental health was appropriately confined to whether symptom misrepresentation or magnification had occurred and whether her psychological disorders had been exacerbated.

Accordingly, we conclude that the second ALJ did not err or deny claimant due process by crediting the IME physician's opinion.

## IV.

Claimant next contends the second ALJ erred by allowing employer to assert her

preexisting mental impairments as an affirmative defense. Again, we disagree.

 The record does not indicate that claimant's emotional condition was raised as an affirmative defense. Further, although the record contains some evidence of claimant's mental impairment, such evidence was limited to claimant's medical records, claimant did not object to their admission, and the second ALJ did not rely on them in determining that claimant had not sustained an industrial injury. Therefore, even if evidence of claimant's mental impairment was improperly allowed, her substantial rights were not affected. *See* § 8–43–310, C.R.S. 2007 (harmless error is to be disregarded).

We make no determination regarding claimant's allegations that employer's discovery requests and its actions in leaving her medical records in the courtroom after one of the hearings constituted an invasion of her fundamental right to keep her protected mental health information private. That issue and any available relief involve matters outside the scope of the Workers' Compensation Act.

## V.

Claimant challenges many of the factual determinations made by the second ALJ. However, we agree with the Panel that, although conflicting evidence was produced at the hearings, the second ALJ's findings are amply supported by substantial evidence and thus must be affirmed on review. § 8–43–308, C.R.S.2007; *Cary v. Chevron U.S.A., Inc.,* 867 P.2d 117, 119 (Colo.App.1993) (this court is bound by the ALJ's factual determinations, even when the evidence is conflicting).

Finally, we have considered claimant's other contentions, but conclude that they present us with no grounds upon which the order of the second ALJ or the Panel may be set aside.

The order is affirmed.

Judge CASEBOLT and Judge TERRY concur.